UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.  ) <br> ) <br> CHARLIE VICK, ) <br> ) <br> Defendant ) <br> ) | Crim. No. 23-CR-40003-MRG |

**GOVERNMENT'S MOTION FOR DEFENDANT'S CONTINUED DETENTION**

The United States of America, by Joshua S. Levy, Acting United States Attorney, and Brendan D. O'Shea, Assistant United States Attorney for the District of Massachusetts, opposes Defendant Charlie Vick's motion to be released from custody pending trial.

**I.   Background**

The Defendant, Charlie Vick, lived in Rhode Island with his uncle, Jamie Warner.[1] On February 17, 2023, Vick allegedly assaulted his then-girlfriend by throwing bleach on her and pointing a loaded gun at her head and threatening to kill her. Vick was, at the time, on federal supervised release due to a felon-in-possession conviction in Rhode Island, the supervision of which was transferred to the District of Massachusetts. *United States v. Vick*, 1:19-CR-00011-WES (D. R.I.).

On February 18, Vick's girlfriend reported the crime to the police and supplied photos of Vick holding a gun - a 9mm Glock pistol with an affixed tactical light - as well as a photo of Vick pointing the gun. On February 19, Rhode Island issued an arrest warrant for Vick on charges of domestic assault and battery and related offenses.

---

[1] The information recited in this Background section is primarily taken from prior filings of the parties, and transcripts of the testimony of witnesses in this matter.

1

Just before 7:00 a.m. on February 21, a task force of Rhode Island and Massachusetts officers saw Vick drive a Nissan Altima to his place of work in Uxbridge, Massachusetts and park in the parking lot. The Nissan belonged to Warner, but Warner had allowed Vick to borrow it repeatedly over the previous weeks. After parking the Nissan, Vick remained in the car for some time. When Vick emerged, he was arrested on the warrant.

Vick was taken to the barracks in Millbury, Massachusetts, and officers discovered the Nissan was unregistered and uninsured and had unauthorized plates attached to it. They also learned that Vick's uncle could not lawfully drive the car since his license was suspended. Several officers returned to the parking lot to wait for Warner's arrival.

Warner arrived in the parking lot in a white Lexus driven by another nephew. Warner obtained the keys to the Nissan from Vick's employer. Warner and his son thereafter got in the Nissan. Before leaving, however, Warner removed a jacket from the car, balled it up, and placed it in a red backpack in the trunk. After Warner drove onto the street, the officers stopped him for driving an unregistered and uninsured car without a license.

After telling Warner the Nissan needed to be towed, officers permitted him and his son to leave the scene. Before the tow truck arrived, officers conducted an inventory search of the car. As part of this, a trooper opened the trunk and found a loaded 9mm Glock handgun in the jacket stuffed in the red backpack.

A federal grand jury indicted Vick for being a felon in possession of a firearm, based on the gun officers seized from the trunk of Warner's Nissan.

The case went to trial, and the jury hung, resulting in a mistrial. After the mistrial, the grand jury returned a superseding indictment, which renewed the felon-in-possession charge, and added a witness tampering count.

Prior to retrial, Vick moved to suppress the statements he made upon arrest, arguing they were the product of a custodial interrogation that was not preceded by *Miranda* warnings, and he moved to suppress the gun seized from the trunk of the Nissan.  The government opposed the motions. The Court held an evidentiary hearing on the suppression motions, and later allowed Vick's motions, resulting in the suppression of Vick's statements to law enforcement, and the gun seized from the Nissan.  *See United States v. Vick*, __ F. Supp. 3d__, No. 4:23-CR-40003-MRG, 2024 WL 3553107 (D. Mass. July 26, 2024).

The government appealed and Vick moved to be released from detention.

**II.     Applicable Law**

Under the Bail Reform Act, upon motion of the government, a defendant must be detained  before trial if, after a hearing, "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).  The government must establish risk of flight by a preponderance of the evidence, and/or dangerousness by clear and convincing evidence.  *See United States v. Patriarca*, 948 F.2d 789, 792-93 (1st Cir. 1991); *United States v. Debrum*, No.15-10292-NMG, 2015 WL 6134359 at *4 (D. Mass. Oct. 19, 2015).

The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of Section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

    (3) the history and characteristics of the person, including-

        A. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        B. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

    (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release…

18 U.S.C. § 3142(g).

### III. Argument

Vick should remain detained pending re-trial, because he is an acute danger to the community, and a flight risk.

18 U.S.C. 3142(f)(1)(E) authorizes pretrial detention in a case, such as this, that involves the possession of a firearm. *See also United States v. Vazquez-Cintron* No. 19-685 (PAD), 2020 WL 1310540 (D.P.R March 17, 2020); *United States v. Rocha*, 2019 WL 4384465 at *4 (N.D. Ill. Sept. 11, 2019). Felons, such as Vick, who possess guns, are often flight risks by virtue of the charged conduct. "[T]he nature of the crime is serious. Being a convicted felon and then taking possession of a firearm, in violation of the law, displays a tendency towards repetitive criminal conduct. This pattern of conduct, in light of the ten year penalty[2] and potential enhancement, indicates a risk of flight." *U.S. v. Powell*, 813 F. Supp. 903 (D. Mass. 1992). For similar reasons, felon-in-possession offenders often pose a danger to the community.

Vick, a recidivist felon-in-possession offender, with a lengthy criminal history, poses a danger, and cannot be trusted to abide by judicial release conditions. That Vick is charged here, as well, with attempting to obstruct a trial witness, offers more evidence of this.

---

[2] The penalty under 18 U.S.C. § 922(g) is now up to 15 years of prison.

Leading up to sentencing in Vick's prior federal felon-in-possession case, *United States v. Vick*, 1:19-CR-00011-WES (D. R.I.) -- which again, the District Court in Massachusetts is now supervising -- the United States Probation and Pretrial Services Office for the District of Rhode Island prepared a presentence investigation report (the "RI PSR") (Exhibit A, under seal).[3]  By the government's reading of this document, and Vick's Board of Probation record (Exhibit B, under seal), Vick has several prior convictions, approximately 29 arrests and 8 restraining orders taken out against him by several women. Vick's convictions include possessing ammunition without a license, carrying a dangerous weapon, threatening to kill people (an ex-girlfriend and another person), attempting to break into the home of another (the ex-girlfriend), and possessing a large capacity firearm feeding device.

Given Vick's criminal history, the United States District Court in Rhode Island varied upward in the applicable guideline range in sentencing Vick, which Vick appealed.  The First Circuit Court of Appeals upheld the District Court's upwardly variant sentence, noting Vick's unique criminal history:

> "In ultimately announcing the decision to vary upwards, the court focused on two aspects of Vick's conduct: 'threatening, assaultive, violent behavior' and 'an obsession of some sort, with firearms,' which in turn motivated concerns for public safety and recidivism. These insights were properly gleaned from the full complement of reliable information available to the court, including Vick's previous convictions and the circumstances of the instant arrest."

*U.S. v. Vick*, 852 Fed.Appx. 546, 547 (1st Cir. 2021).

---

[3] Because Vick's Rhode Island case was transferred, for supervision, to the United States District Court of the District of Massachusetts, the United States Probation and Pretrial Services Office for the District of Rhode Island provided the RI PSR to the United States Probation and Pretrial Services Office for the District of Massachusetts, for their use in supervising Vick.

The reference by the District Court in Rhode Island to Vick's apparent violent behavior and proclivity to guns, quoted by the First Circuit, may have stemmed partly from information that the RI PSR noted, including that Vick had been charged with:

In 2009, allegedly ripping his mother's phone from the wall, and throwing his 8-month pregnant sister on a couch, after Vick's mother threatened to call the Revere Police Department on Vick (RI PSR ¶ 45);

In 2009, allegedly holding a knife to the stomach of a woman (Person 1) who was pregnant with his child, and threatening to stab her and leave her to die (RI PSR ¶ 46);

In 2009, allegedly threatening and assaulting two individuals in Boston (RI PSR ¶ 47);

In 2010, allegedly throwing a brick through the window of Person 1 (RI PSR ¶ 52);

In 2010, allegedly smashing the windows of a car belonging to Person 1, and threatening to shoot and kill Person 1 and her child (RI PSR ¶ 53);

In 2011, allegedly going to a residence in Revere, slapping two women in the face, walking up to a woman and pulling out and firing a gun, as allegedly witnessed by several individuals, and where the Revere Police recovered 6 shell casings on the sidewalk (RI PSR ¶ 55);

In 2016, allegedly threatening a woman who was the mother of one of Vick's children (Person 2) and putting the child in harm (RI PSR ¶ 56);

In 2016, allegedly firing a gun in Malden (RI PSR ¶ 57);

In 2016, after a family argument, allegedly firing a gun in Malden, as allegedly witnessed by several percipient witnesses (RI PSR ¶ 58);

In 2016, allegedly possessing a gun without a license (RI PSR ¶ 59);

In 2017, allegedly spitting in the face of, and throwing a chair into the torso of, Vick's sister (RI PSR ¶ 60);

In 2017, allegedly violating a restraining order in Malden (RI PSR ¶ 61);

In 2017, allegedly threatening Person 3, the mother of one of Vick's children, as well as threatening the child, after allegedly having previously held a knife and gun to the head of Person 3 (RI PSR ¶ 62);

In 2018, allegedly brandishing a gun and waiving it in the face of his ex-girlfriend, Person 4 (RI PSR ¶ 63);

6

In 2018, allegedly threatening to murder a person who Vick did not know (RI PSR ¶ 64).

The First Circuit's reference, as well, to "the circumstances of the instant arrest" (*Vick*, 852 Fed. Appx. at 547) appears to have meant those events that led to Vick's federal felon-in-possession prosecution in Rhode Island, then on appeal. Those circumstances are detailed in the criminal complaint, publicly available on the docket of the United States District Court for Rhode Island. *United States v. Vick*, 1:19-CR-00011-WES (D. R.I.), Doc. 3-1. Specifically, the complaint alleges, among other things, that on August 31, 2018, Vick was involved in a shooting in Chelsea, Massachusetts. *See e.g., id.* at ¶ 31.

It is no surprise that the instant prosecution came to be, after Vick's then-girlfriend alleged that he held a gun to her head; nor that as Vick's trial approached in the instant case, he allegedly repeatedly contacted the girlfriend, through messages from prison, to attempt to convince her to not appear and testify at trial, saying, among other things.

"I just got two years because of you, you piece of shit;" (Doc. 101, Trial Trans., p. 23, lines 9 and 10);

"If I have to pay you to stay away, let me know;" (Doc. 101, Trial Trans., p. 23, lines 23 and 24);

"I got some bands…Just do me a favor. That night pack a bag, go stay with your brother two days, that's all. Please, I ask. You're going to help me get eight more? I just got two because of you." (Doc. 101, Trial Trans., p. 24, lines 6-9).

Taken together, the nature of the current case against Vick, as well as his history and characteristics, demonstrate that he is a danger, and a flight risk. Because of this, this Court should continue to detain Vick. There is no condition or combination of conditions of release that could assure the safety of the public here, nor prevent flight. Vick cannot be trusted to abide by this Court's orders, nor refrain from crime.

### IV. Conclusion

For the reasons described above, the government requests that the Defendant, Charlie Vick, remain incarcerated.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By: s/ *Brendan O'Shea*
Brendan O'Shea
Assistant U.S. Attorney

### CERTIFICATE OF SERVICE

I hereby certify that this document has been filed electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

s/ *Brendan O'Shea*
Brendan O'Shea
Assistant U.S. Attorney